United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN MOE MOORE,

Plaintiff,

v.

SALINAS VALLEY STATE PRISON MENTAL HEALTH DEPT., et al.,

Defendants.

Case No. 5:21-cv-01019 EJD (PR)

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; GRANTING IN PART DEFENDANTS' REQUEST FOR ALTERNATIVE FORMS OF RELIEF**

(Docket No. 34)

Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at the Salinas Valley State Prison ("SVSP"). Dkt. No. 1.[1] The Court found the complaint stated cognizable claims against Defendants Melissa Stolsig, Jonna Dunlap, Alicia Nix, and Lt. Gomez for deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's rights under the Eighth Amendment. Dkt. No. 5 at 3. The Court also found that Plaintiff failed to state a cognizable claim against Defendant SVSP Mental Health Department. Id.

The Court gave Plaintiff leave to amend his complaint, or the option of filing notice to strike the non-cognizable claim in lieu of amending the complaint. Id. at 4. Plaintiff filed his notice to strike the non-cognizable claim. Dkt. No. 8. The Court accordingly

[1] All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

struck Plaintiff's non-cognizable claim against SVSP Mental Health Department and ordered Defendants to file a motion for summary judgment or other dispositive motion on the cognizable claims. Dkt. No. 9.

Defendants filed a motion for summary judgment on grounds that Plaintiff failed to exhaust administrative remedies. Dkt. No. 34. Plaintiff filed opposition. Dkt. No. 37. Defendants replied. Dkt. No. 38.

Defendants request multiple alternative forms of relief, in the event their motion for summary judgment is denied on the current state of the record. First, Defendants ask the Court to conduct a preliminary evidentiary hearing to resolve any disputed questions of fact concerning exhaustion that would otherwise prohibit the Court from granting Defendants' motion. Dkt. No. 34-1 at 6-7.

Second, Defendants request leave to file a second summary judgment motion on the merits in the event this motion for summary judgment is denied. Id. at 7, citing Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim."). Finally, Defendants request they be permitted to submit "further briefing on the issue [of exhaustion]" if this motion is denied. Id.

For the reasons set forth below, Defendants' motion for summary judgment on for failure to exhaust administrative remedies is **DENIED** without prejudice. Defendants' request for alternative forms of relief is **GRANTED in part**.

## DISCUSSION

### I. Statement of Facts[2]

#### A. Substantive Basis of Plaintiff's Claims

Plaintiff was housed at SVSP when the events underlying his claims took place. Dkt. No. 1 at 1, 2. Plaintiff submitted three written requests for mental health care on

[2] The following facts are not disputed unless otherwise stated.

March 11, 2020, May 15, 2020, and May 26, 2020.[3] Dkt. No. 1 at 3, Dkt. No. 34-5 at 14. Plaintiff's three requests stated that he had an urgent need for mental health care services because of recent deaths in his family,[4] inability to sleep, and he had resumed hearing voices. Dkt. No. 1 at 3; see Dkt. No. 34-5 at 14. Plaintiff stated that he had been taken off medications "some years ago" but was experiencing re-occurrence of episodes. Dkt. No. 1 at 3.

Plaintiff alleges his three requests for mental health services went unanswered until June 11, 2020, when Plaintiff was seen by Defendant Stolsig, a psychologist. Dkt. No. 1 at 4, 5-7; see also Dkt. No. 19 at 32 (Progress Note of June 11, 2020 visit created by Defendant Stolsig). Plaintiff alleges that Defendant Stolsig failed to adequately address various mental health regulations and considerations including Plaintiff's symptoms and history of suicide attempts and suicidal ideation. Dkt. No. 1 at 5-6.

Plaintiff alleges that on July 3, 2020, he advised an unidentified correctional officer that he was suicidal. Id. at 7. In response, Plaintiff was assessed and interviewed by Defendant Dunlap (a Licensed Clinical Social Worker), Defendant Nix (a Psychiatric Technician), and Defendant Lt. Gomez. Id. at 7; Dkt. No. 34-1 at 1. Defendants Dunlap, Nix, and/or Gomez concluded that Plaintiff was not at imminent risk of suicide. Dkt. No. 1 at 7. Plaintiff was placed back in his cell. Id. at 8. Plaintiff attempted suicide the same day, July 3, 2020, by hanging himself. Id. He was found unconscious and unresponsive. Id.

**B. Plaintiff's Exhausted Grievance**

Meanwhile, on May 27, 2020, Plaintiff had initiated a grievance complaining that he had not received a response to his three requests for mental health care. Dkt. No. 34-5 at 11. This grievance was received by prison officials on June 1, 2020, and was ultimately exhausted as of October 22, 2020. Dkt. No. 34-3 at 3 ¶ 9; Dkt. No. 34-5 at 4, 10.

---

[3] Plaintiff's three requests for mental health care were submitted using the designated form known as Form 7362. Dkt. No. 34-5 at 15, 28.

[4] Plaintiff's sister and brother had died in a car accident. Dkt. No. 1 at 7.

The question at the core of Defendants' instant motion is whether this exhausted grievance can serve as predicate for Plaintiff's claims against Defendants. The parties agree that Plaintiff did not initiate any other relevant grievance. Dkt. No 1 at 1-2; Dkt. No. 34-1 at 3. Defendants emphasize that Plaintiff did not file any grievance specifically naming any of the individual Defendants, or identifying either June 11, 2020 or July 3, 2020 as relevant dates. Dkt. No. 34-3 at 3 ¶ 9.

The subject matter of Plaintiff's grievance as initially articulated by him was as follows:

> I have been waiting to be seen by mental health I[']ve put in 3 request[s] all marked urgent the first one I put in was early March stating that I had 2 deaths in my family and needed to be seen immediately because some of my old habits were re[o]ccuring regarding voices but I was never called in. I recently filled out another request 5-15-2020 again marked urgent and again I was overlooked and since the voices are getting louder[.] I filled out another one 5-26-2020 marked urgent and today on the 27th I was seen by medical and not mental health and I am beginning to feel like my mental health is not being taken serious because I am not receiving help. I have patient copy of mental health forms I submitted.

Dkt. No. 34-5 at 11. Prison officials identified three separate issues raised by Plaintiff's grievance, and three separate actions requested by Plaintiff:

| | **Issue Type** | **Action Requested** |
|---|---|---|
| **Issue 1**: | Disagreement with Treatment/Mental Health | You alleged that you[] submitted three CDCR 7362; Health Care Services Request Forms to be seen by mental health have gone unanswered. |
| **Issue 2**: | Mental Health/ Psychiatric Evaluation | You stated that your old habits of hearing voices was reoccurring. |
| **Issue 3**: | Disagreement with Treatment/Mental Health | You alleged that your mental health is not being taken seriously because you are not receiving help. |

Dkt. No. 34-5 at 4; see also id. at 13 (similar description of Plaintiff's three issues by the first level institutional reviewer); id. at 6 (similar description of Plaintiff's three issues by the second level headquarters reviewer).

United States District Court
Northern District of California

On July 14, 2020, Plaintiff was interviewed at SVSP about his grievance by Dr. Wood, Senior Supervising Psychologist. Id. at 13. On August 3, 2020, Plaintiff's grievance was denied at the first level of review, based on a lengthy discussion and analysis of Plaintiff's history and status, including events that had occurred since Plaintiff initially submitted his grievance. Id. at 13-15. The analysis is presented under the heading "Basis for Institutional Level Disposition" [hereinafter "First Level Basis"]. Id. at 13. The First Level Basis included the following statement:

> Between March 12, 2020 and May 27, 2020, you submitted three CDC 7362's requesting to be seen by a mental health clinician. A psychologist subsequently saw you on June 11, 2020.[5] This psychologist noted that in your chart you had formerly been CCCMS LOC and your [sic] reported a recurrence of symptoms and you wished to return to CCCMS. The psychologist signed several orders into your chart in order for you to be assessed by a psychiatrist and a mental health clinician to determine if you need psychiatric medication and/or CCCMS LOC.

Id. at 14. The First Level Basis proceeded to describe Plaintiff's placement in "Delta 1 ASU on June 1, 2020" where Plaintiff was seen by an Institutional Classification Committee[6] and a Licensed Clinical Social Worker.[7] Id. The First Level Basis continues to describe the mental health care Plaintiff received after his July 3, 2020 suicide attempt, including: (1) a July 4, 2020 admission to a Temporary Mental Health Unit; (2) a July 17, 2020 evaluation by Mental Health Primary Clinician Ms. Hernandez; and (3) a plan of care that was discussed with Plaintiff. Id.

Each page of the first level grievance decision has the following notation at the bottom of the page: "Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority." Id. at

[5] Although Defendant Stolsig is not mentioned by name, this seems likely to be a reference to Defendant Stolsig's June 11, 2020 visit with Plaintiff. It seems unlikely that a different psychologist visited Plaintiff on the same day. However, the Court cannot make this determination on the present record.

[6] Individual members of the Committee are not named. It is thus unclear whether any of the Defendants were on the Committee.

[7] The Licensed Clinical Social Worker is not identified by name. It is thus unclear whether this might have been Defendant Dunlap.

13, 14, 15. The institutional first level review concluded that Plaintiff's grievance was denied. Id. at 15. The denial was signed on August 3, 2020, by the Chief Executive Officer of SVSP. Id.

On August 6, 2020, Plaintiff timely appealed the first level denial to the second level. Id. at 10. The second level decision was similarly based on a detailed factual analysis under the heading "Basis for Headquarters' Level Disposition" [hereinafter "Second Level Basis"]. Id. at 6-7. The Second Level Basis differed from the First Level Basis in that the Second Level Basis described continuing mental health treatment provided to Plaintiff during the month of August 2020. Id. Plaintiff's August 2020 treatment included a specific medication, a meeting with an Interdisciplinary Treatment Team,[8] and a visit with a psychiatrist. Id. at 7. There is also a reference to Plaintiff's "Primary Clinician."[9] Id.

Similar to the first level grievance decision, each page of the second level grievance decision has the following notation at the bottom of the page: "Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority." Id. at 6, 7, 8. Plaintiff's grievance was denied at the second level of review as of October 22, 2020, establishing exhaustion. Dkt. No. 34-3 at 3 ¶ 9; Dkt. No. 34-5 at 6.

**C. Parties' Arguments**

Defendants argue that Plaintiff failed to exhaust his administrative remedies in that he did not initiate any grievance specifically giving notice of his specific issues with the specific persons he has sued in this lawsuit. Dkt. No. 34-1 at 5-6. Defendants claim that Plaintiff's exhausted grievance was limited to the issue of "delay in mental-health appointments weeks before any of the incidents in the Complaint occurred." Id. at 5.

---

[8] It is once again unclear whether any of the Defendants belonged to Plaintiff's Interdisciplinary Treatment Team.

[9] Plaintiff's Primary Clinician is not identified by name but is perhaps the same Ms. Hernandez who was named in the First Level Basis.

According to Defendants' reasoning, Plaintiff is not claiming any of the Defendants were involved in delays in his mental health treatment but rather that Defendants failed to properly assess Plaintiff for suicidal ideation on June 11, 2020 and July 3, 2020, and that Plaintiff's exhausted grievance did not serve to notify prison officials of Plaintiff's actual issues with Defendants. Id. at 6.

Plaintiff advances four arguments in response. First, that all four Defendants violated Plaintiff's Eighth Amendment rights when they refused to give him needed clinical treatment when Plaintiff asked for help as he felt himself "slipping away and headed for crisis." Dkt. No. 37 at 3. This argument goes to the substantive merits of Plaintiff's claims and does not address the question whether Plaintiff exhausted administrative remedies on his claims against some or all the Defendants.

Second, Plaintiff argues that he was encouraged to use direct communication with health care providers as the means to obtain help, and he was told the grievance process is not a substitute for direct communication. Dkt. No. 37 at 3-4. Plaintiff claims his primary concern was to obtain help, that he was primarily attempting to directly communicate his need for help, and that he used the grievance process "as best as he could in an effort to communicate during his time of confusion and being in an altered state of reality[.]" Id. at 4.

Third, Plaintiff argues that he may have been mentally incapable of understanding that he needed to file additional grievances. Id. ("Plaintiff may very well have thought that he was doing all that was supposed to be done with the filing of the grievance.") Plaintiff argues he cannot fully account for his mental state "while he was in crisis other than he felt himself sliding out of touch with reality, and wanting help to get back to normal, and feeling that he was being ignored, and needed help in a bad way[.]" Id.

Fourth, Plaintiff responds to the argument that his grievance did not identify Defendants by name, by noting that the persons responding to his grievance were aware of the individuals and the specific incidents that he was complaining of. Id. ("at the institutional level response they [] brought those incidents and the dates of them up.")

Plaintiff argues it was "made [] clear" to him:

> . . . that they were aware of the Defendants involved, and the incidents of those dates, and Plaintiff continued the grievance process from there giving them every chance to do something about it but still they took no corrective measures in respon[s]e at the highest level it could go, therefore completing the grievance process.

Id. at 5.

Defendants reply that Plaintiff's August 6, 2020 appeal of the first level response demonstrates that Plaintiff was capable of pursuing grievance processes. Dkt. No. 38 at 2. Defendants argue that Plaintiff affirmatively chose not to use the grievance process for the issues in this lawsuit. Id. Defendants maintain that grievance regulations obliged Plaintiff to "notify[] the prison that Defendants failed to properly assess him for suicidal ideation on June 11 and July 3" and that Plaintiff's grievance did not fulfill that requirement. Id. Defendants assert that "[t]he grievance responses did not discuss Defendants, June 11, July 3, or any allegations that [Plaintiff] was not properly assessed for suicide."[10] Id.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[10] This last assertion may not be entirely accurate, based purely on the face of the grievance responses themselves, which at minimum discussed mental health care Plaintiff received on June 11, 2020.

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

//

//

**A. Exhaustion**

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Courts may not create their own "special circumstances" exceptions to the exhaustion requirement. Ross v. Blake, 578 US. 632, 638 (2016) (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably—even though mistakenly—believed he had exhausted remedies).

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 84. "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." Id. at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. Id. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (footnote omitted). Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones v. Bock, 549 U.S. 199, 217-18 (2007). A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. Id.

Nonexhaustion under § 1997e(a) is an affirmative defense. Jones v. Bock, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in

their complaints. Id. at 215-17. A defendant who raises the issue of nonexhaustion in a motion for summary judgment under Rule 56 of the Rules of Civil Procedure must produce evidence demonstrating failure to exhaust. Albino, 747 F.3d at 1162, 1172, 1176. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. Id. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. Id.

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. Id. at 1172; see id. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. Albino, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id. But as required by Jones, the ultimate burden of proof remains with the defendant. Id.

Viewing the undisputed evidence in the light most favorable to Plaintiff, Defendants have failed in several respects to show that Plaintiff failed to properly exhaust all available administrative remedies as to his Eighth Amendment claims against each of them. For the reasons set forth in detail below, Defendants have either failed to meet their burden of production, or failed to refute Plaintiff's responsive arguments, as to: (1) whether Plaintiff's exhausted grievance was sufficiently specific to comply with applicable California regulations; (2) whether Plaintiff's exhausted grievance exhausted at least some

United States District Court
Northern District of California

of the claims against at least some Defendants; and (3) whether the grievance procedure was effectively unavailable to Plaintiff at times when he perhaps should have initiated additional grievances, either because of his mental state or because he was given to understand that his open grievance fully addressed his issues.

Based on this analysis, the Court is unable to find that Plaintiff failed to properly exhaust administrative remedies for his claims as to any of the individual Defendants. Accordingly, the Court must deny Defendants' motion for summary judgment.

**1. Proper Exhaustion: Grievance Specificity**

California's current regulations for health care grievances give inmates the right to administratively grieve and appeal "applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a). For health-care matters, inmates must use a form CDCR-602 HC. Cal. Code Regs. tit. 15, § 3999.227. The regulations refer to the first level as a grievance and the second level as an appeal. At the first level, the inmate completes Section A of the form CDCR-602 HC to describe the specific complaint that relates to his health and submits the form to the Health Care Grievance Office. Id. at § 3999.227(b). If dissatisfied with the institutional level grievance disposition, the inmate may appeal the disposition by completing Section B of the form CDCR 602 HC and submitting the package to the Health Care Correspondence and Appeal Branch (HCCAB) in Elk Grove, California. Id. at § 3999.229(a).

In submitting a health care grievance, inmates are "limited to one issue or set of issues related to a single health care discipline that can reasonably be addressed in a single health care grievance response." Id. at § 3999.227(c). Inmates are directed to "present their health care grievance in a single submission." Id. at § 3999.227(l). As to the identification of involved staff:

> (g) The grievant shall document clearly and coherently all information known and available to him or her regarding the issue.
>
> > (1) The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and

> description of their involvement.
>
> (2) If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance.

Cal. Code Regs. tit. 15, § 3999.227(g)(1) & (2). In Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), the Ninth Circuit reviewed the district court's 2008 ruling that plaintiff had failed to exhaust available (non-health care) administrative remedies as to an officer not linked to wrongdoing in plaintiff's grievance and noted that neither the PLRA itself nor California regulations required an inmate to name the responsible parties who may ultimately be sued. See id. at 839 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer).

In Jones, the Supreme Court held that because the Michigan Department of Corrections' procedures made no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion was unwarranted. Jones, 549 U.S. at 217; see id. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]")). The Court concluded that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances. Id. (citation omitted).

Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id. The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." Id. (citation and internal quotation omitted). Compare id. (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order) with Reyes v. Smith, 810 F.3d 654, 658-59 (9th Cir.

2016) (plaintiff's claim exhausted as to prison doctors named in federal action where grievance plainly put prison officials on notice of the nature of the wrong alleged in federal action – denial of pain medication by defendant doctors – and prison officials easily identified the named prison doctors' involvement in the issue) and Wilkerson, 772 F.3d at 840 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. Reyes, 810 F.3d at 656, 658. Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3) (repealed eff. June 1, 2020), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review. See id. at 656-57.

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court cannot find that Plaintiff failed to comply with California's grievance procedures as to the factual specificity of his grievance issues with some or all the Defendants. Prison officials clearly understood that at least one of the issues articulated in Plaintiff's grievance was that his "mental health is not being taken seriously" because he was "not receiving help." Dkt. No. 34-5 at 4, 13, 6. This was understood to be a distinct issue separate and apart from Plaintiff's other issue that he had not received a response to his submitted Health Care Service Request Forms. Id. (defining these two issues as separate and distinct). The distinction was maintained from the outset when prison officials first accepted Plaintiff's grievance and continued through the first and second level grievance reviews. Id.

Prison officials' concurrent consideration of these two related issues is consistent with California regulations asking inmates to make a "single submission" that is "limited to one issue or set of issues related to a single health care discipline that can reasonably be addressed in a single health care grievance response." Cal. Code Regs. tit. 15, §

3999.227(c) & (l). Prison officials themselves apparently deemed the issues presented in Plaintiff's grievance addressable in a single health care grievance response because that is how they responded to the grievance. In other words, the response provided by prison officials demonstrates that Plaintiff's grievance *did* comply with grievance regulations in this regard.

As to the question of whether Plaintiff's exhausted grievance encompassed events which occurred after Plaintiff initially submitted the grievance, it does appear from this record that prison officials construed the grievance as encompassing Plaintiff's ongoing mental health care. Both the first and second level reviewers made clear that their reviews were based on records available through the dates of their decisions – i.e., not just Plaintiff's mental health records as of the date he submitted his grievance. Dkt. No. 34-5 at 6, 7, 8, 13, 14, 15. The first level review took specific note of a psychologist visit on June 11, 2020, which may have been conducted by Defendant Stolsig. Id. at 14. Both the first and second levels of review cited other mental health care which may have been provided by Defendant Stolsig and/or other of the Defendants. Id. at 7, 14.

Events related to Plaintiff's mental health care were unfolding as the grievance was working through the process of exhaustion, between May 27 and October 22, 2020. In responding to Plaintiff's grievance, prison officials included rather than excluded the mental health care that Plaintiff continued to receive during that time period. The record before the Court suggests both Plaintiff and the officials who denied his grievance understood that the grievance inquiry included specific mental health care decisions made by some or all the Defendants subsequent to Plaintiff's initial submission of his grievance. An intertwined issue is whether Plaintiff's grievance sufficiently identified any of the individual Defendants as required by Cal. Code Regs. tit. 15, § 3999.227(g) and/or whether prison officials' handling of the grievance otherwise excused this requirement. See Reyes, 810 F.3d at 658.

Thus, there remain genuine issues of material fact as to whether Plaintiff's exhausted grievance included some or all the Defendants' actions subsequent to Plaintiff's

initial submission of his grievance. There are a number of sub-issues within this overarching material issue, such as whether the grievance review addressed the events of July 3, 2020, as well as the psychological evaluation of June 11, 2020, and the extent to which the actions of the individual Defendants were scrutinized in the course of the grievance process. Plaintiff could not have included these events and actions in his May 27, 2020 grievance submittal. However, if prison officials deemed these events and actions as included in the grievance review, and especially if prison officials conveyed such inclusion to Plaintiff via their interview and written denials, then at minimum Plaintiff's grievance must have served the function of alerting prison officials to those alleged wrongs for which Plaintiff seeks redress. See Griffin, 557 F.3d at 1120. If Plaintiff's May 27, 2020 grievance did not state his issues with mental health care provided as of June 11 or July 3, 2020, but prison officials decided the merits of those mental health care events anyway at all available levels of administrative review, the grievance may have exhausted those issues. See Reyes, 810 F.3d at 658.

On the grievance record Defendants have produced, they have failed to meet their burden to show that Plaintiff's exhausted grievance was insufficiently specific to encompass any of his claims in this lawsuit. Albino, 747 F.3d at 1166. In light of the material factual disputes described above, the Court cannot conclude that Plaintiff's exhausted grievance failed to encompass any of his claims against Defendants. This is an adequate basis to deny Defendants' summary judgment motion. There are also additional reasons to deny Defendants' failure to exhaust defense on the present record, which the Court proceeds to address.

**2. Proper Exhaustion: Some or All Claims**

The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. Jones, 549 U.S. at 222-24 (rejecting "total exhaustion-dismissal" rule); Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005). The proper treatment of a mixed complaint, i.e., a complaint with both exhausted and unexhausted claims, will depend on the relatedness of the claims

contained within. Id. at 1175. When a prisoner has filed a mixed complaint and wishes to proceed with only the exhausted claims, the district court should simply dismiss the unexhausted claims when the unexhausted claims are not intertwined with the properly exhausted claims. Id. On the other hand, when a plaintiff's mixed complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims, is the proper approach. Id. at 1176.

On a more fully developed record, it might ultimately be determined that Plaintiff exhausted administrative remedies as to one or more of the Defendants, but perhaps Plaintiff failed to do so as to other Defendants. For example, there is currently no evidence in the record as to whether Defendant Gomez is a health care professional or whether his actions were evaluated in the course of deciding Plaintiff's exhausted mental health care grievance. The record suggests that Plaintiff's exhausted mental health care grievance did not exhaust any claim against Defendant Gomez, but if so, Defendants have failed to meet their burden of production to demonstrate that this is the case. At the other end of the spectrum, the record seems to indicate that Defendant Stolsig conducted the June 11, 2020 psychological evaluation which thus creates a material issue whether prison officials examined Defendants Stolsig's actions in the course of denying Plaintiff's grievance. Defendants have not met their burden to show that this open question is immaterial to Defendant Stolsig's exhaustion defense. The current record barely suggests the roles played by Defendants Dunlap and Nix, and whether Plaintiff's claims against them might fall within the scope of the exhausted grievance.

On the grievance record Defendants have produced, they have failed to meet their burden to show that Plaintiff's exhausted grievance failed to exhaust his claims against all – or any - of the individual Defendants. Albino, 747 F.3d at 1166. There remain genuine issues of material fact whether Plaintiff's exhausted grievance did accomplish exhaustion of at least some of his claims against some of the Defendants, that preclude the Court from entering summary judgment as to any or all of the individual Defendants.

United States District Court
Northern District of California

**3. Proper Exhaustion: Available Administrative Remedies**

"Considerable deference is owed to those who administer prison systems." Fuqua v. Ryan, 890 F.3d 838, 845 (9th Cir. 2018). "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." Ross, 578 U.S. at 644. Nevertheless, there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (offering as an example a prison handbook "directing inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. (offering as an example a situation where "some mechanism exists to provide relief, but no ordinary person can discern or navigate it"); see Fuqua, 890 F. 3d at 849 (in this category is expectation that inmate pursue simultaneous administrative appeal procedures --- one for disciplinary charges, and another for conditions of confinement --- to exhaust a single claim that his discipline for not working on religious holiday violated his rights). Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. (citing as examples Woodford, 548 U.S. at 102 along with various appellate court cases addressing "a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.").

The Supreme Court in Ross only describes the above categories as "three kinds of circumstances," id. at 643, and does not suggest that they are exclusive. In Marella v. Terhune, 568 F.3d 1024, 1026 (9th Cir. 2009), the plaintiff claimed that he was unable to acquire and complete a grievance form during the 15-day filing period in effect at that time. Id. He spent two days in the hospital after a knife attack, was subsequently moved

to the infirmary, and then placed in administrative segregation. Id. Following his release, thirty-three days after the knife attack, he filed his grievance alleging constitutional violations stemming from the knife attack. Id. The grievance was denied as untimely. Id. The Ninth Circuit found that the district court erred in concluding that, as a matter of law, no exceptions to the timely filing requirement existed and remanded for the court to consider whether the plaintiff was deprived of a meaningful opportunity to grieve within the fifteen days following the assault. Id. at 1027. The district court was ordered to determine whether plaintiff had the opportunity and ability to timely file his initial grievance and, if he failed to do so, "his case should be dismissed." Id. at 1028.

Plaintiff makes two arguments that relate to grievance availability. Dkt. No. 47 at 4-5. First, he asserts that his mental state precluded him from understanding that he may have needed to initiate additional grievances. According to this argument, the grievance procedure was effectively unavailable to Plaintiff because of his mental state during the window for pursuing additional grievances regarding events of June 11, 2020 or July 3, 2020. Plaintiff's second argument is that he was led to believe he did not need to initiate additional grievances because his ongoing mental health treatment was addressed and considered in the context of the grievance he had already initiated.

There is very little case law on the question whether an inmate's mental state may render administrative remedies effectively unavailable so as to obviate the exhaustion requirement, but some courts have been willing to consider such an argument. See Johnson-Ester v. Elyea, No. 07-CV-4190, 2009 WL 632250, *6 (N.D. Ill. Mar.9, 2009) ("The Court sees no reason not to consider, as part of a 'discriminating analysis,' both physical and mental infirmities as possible reasons that generally available administrative remedies might be 'unavailable' in a particular instance."). Such an inquiry would open up a host of subsidiary factual issues such as whether Plaintiff's mental state deprived him of any meaningful opportunity to pursue grievances during the 30 day period following the psychologist visit of June 11, 2020, and/or during the 30 day period following the events of July 3, 2020. See Cal. Code Regs. tit. 15, § 3999.227(b) (health care grievance must be

initiated within 30 calendar days of the action or decision being grieved, or initial knowledge thereof).

Perhaps the more relevant question is whether Plaintiff correctly understood that his May 27, 2020 grievance had set in motion a grievance process that encompassed his claims that his mental health needs generally were not being met, inclusive of events that occurred in June 2020 and July 2020. Dkt. No. 37 at 4. This is arguably, at least in part, how prison officials actually characterized Plaintiff's grievance. Dkt. No. 34-5 at 4, 6, 13. If Plaintiff perceived that he did not need to initiate additional grievances to effect grievance exhaustion as to the events of June 11, 2020 or July 3, 2020, or as to the specific actions of specific individuals in that time period, such a perception does seem to find some support in this current record.

Defendants have failed to persuasively counter Plaintiff's argument that the grievance process was effectively unavailable to him, if indeed he did need to initiate additional grievances in order to effect exhaustion. There are too many unresolved factual issues around the questions of what prison officials deemed as included within the scope of Plaintiff's exhausted grievance, and also whether, when, and how this was conveyed to Plaintiff, to foreclose Plaintiff's argument that administrative remedies were effectively unavailable to him. See Ross, 578 U.S. at 644. Plaintiff has thus shown that there remain genuine issues of material fact that precludes entry of summary judgment in favor of Defendants on this record.

**B. Alternative Relief Requested by Defendants**

Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. Albino, 747 F.3d at 1170. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit. Id. A motion for summary judgment need not be directed solely to the issue of exhaustion. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed

factual questions to jurisdiction and venue. Id. at 1170 (citing cases). But whenever feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation. Id. at 1171.

As to Defendants' request for alternative forms of relief, if the Defendants wish to further pursue their exhaustion defense as to some or all the Defendants, the Court will allow Defendants some latitude in how they may elect to further pursue their defense. At Defendants' discretion, they may submit: (1) a summary judgment motion on the merits; or (2) a renewed summary judgment motion on the issue of grievance exhaustion as to some or all the Defendants. A renewed motion on exhaustion should address the legal analysis and disputed material factual issues the Court has outlined herein. Lastly, it does not appear that the many and complex disputed factual issues prohibiting entry of summary judgment would be most efficiently resolved through an evidentiary hearing.

If Defendants choose to submit a renewed motion on grievance exhaustion and their motion is denied in whole or in part, they may subsequently submit a summary judgment motion on the merits. If any of the Defendants opt against proceeding with a renewed motion on exhaustion as to the claims against them, those Defendants may elect to proceed directly to a summary judgment motion on the merits. For these reasons and in this manner, Defendants' requests for alternative forms of relief is **Granted in Part and Denied in Part.**

**C. Plaintiff's Deposition Transcript**

It appears that Plaintiff may not have received a complete copy of his deposition transcript. See Dkt. No. 37 at 5 ("Plaintiff can not speak on his deposition because it is not complete"). If Defendants have not already provided Plaintiff with a complete copy of his deposition transcript, Defendants shall do so no later than the date they file any further dispositive motion.

//

//

//

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. Defendants' motion for summary judgment is **DENIED** without prejudice. Dkt. No. 34.

2. **No later than fifty-six (56) days from the date this order is filed**, Defendants shall file a dispositive motion or notice indicating that the claims against them cannot be resolved by such a motion. At the discretion of the individual Defendants, some or all of them may choose to file either a **renewed** summary judgment motion based on failure to exhaust administrative remedies **and/or** on the merits.

2. Plaintiff's opposition shall be filed with the Court and served on Defendants **no later than twenty-eight (28) days** from the date Defendants' motion(s) is filed.

3. Defendants shall file a reply **no later than fourteen (14) days** after the date on which Plaintiff's opposition is filed.

4. All other relevant portions of the Court's February 25, 2022, Order of Service, Dkt. No. 23, shall remain in effect.

This order terminates Docket No. 34.

**IT IS SO ORDERED.**

**Dated:** March 9, 2023

EDWARD J. DAVILA
United States District Judge